# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOSHRA ALSAIDI,<br><br>                **Plaintiff**,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF STATE and UNITED STATES DEPARTMENT OF STATE, NATIONAL PASSPORT CENTER,<br><br>                **Defendants.** | Civil Action No. 17-0465 (ESH) |

## MEMORANDUM OPINION

Plaintiff Boshra Alsaidi has sued the United States Department of State ("State Department") and the National Passport Center (collectively "defendants") alleging that defendants arbitrarily and capriciously refused to renew her passport based on an improper finding that she was not a citizen by birth, or that the reason given was a pretext for an informal policy of discrimination against Muslims or, more specifically, against people from Yemen. (Compl. ¶¶ 11–18, ECF No. 1.) Plaintiff brings her claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and the Mandamus Act, 28 U.S.C. § 1361 (Compl. ¶¶ 1, 4), and requests that the Court order the State Department to renew her passport and award her attorney's fees. (*Id.* at 6, 7.) Defendants have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. Dismiss, ECF No. 12 ("Mot.").) Upon consideration of the parties' pleadings and for the reasons discussed herein, the Court finds plaintiff has failed to state a claim upon which relief can be granted and therefore grants defendants' motion to dismiss.

## BACKGROUND

### I. FACTS

Boshra Alsaidi was born in the United States in 1977. (Compl. ¶ 7.) At the time, her father was serving as Second Secretary of the Permanent Mission of the Yemen Arab Republic to the United Nations. (*Id.* ¶¶ 7–8; Mot. Ex. A, ECF No. 12-1.) Alsaidi applied for and was first issued a U.S. passport on March 25, 2003. (Mot. Ex. B at 1, ECF No. 12-2.) She applied to renew her passport on January 4, 2013. (*See* Mot. Ex. A.) The National Passport Center denied her passport renewal application on February 23, 2013, stating that because Alsaidi was born while her father held a position that granted him and his immediate family diplomatic immunity and privileges, Alsaidi was "not born subject to the jurisdiction of the United States" and therefore could not "benefit from the Fourteenth Amendment's citizenship provision."[1] (Mot. Ex. A; Compl. ¶¶ 7–9.)

### II. PROCEDURAL HISTORY

Plaintiff filed her complaint on March 15, 2017. The complaint contains two counts, each seeking the same remedy—an order requiring the State Department to renew plaintiff's passport and award attorney's fees. (*See* Compl. at 6, 7.) She brings both claims under the APA and the Mandamus Act (*id.* ¶¶ 1, 4), arguing that the State Department and National Passport Center denied her passport renewal application on the inaccurate basis that she was not a citizen

---

[1] Although the denial letter was not attached to Alsaidi's complaint, it is referenced therein and defendants have attached a copy as Exhibit A to their motion to dismiss. (Mot. Ex. A); *see Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)) ("In deciding a motion brought under Rule 12(b)(6), a court does not consider matters outside the pleadings," but may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'").

and pursuant to an informal policy of discrimination based on religion or national origin. (*Id.* ¶¶ 12–13, 16, 18.)

The first count alleges that the State Department adheres to a discriminatory "double standard," which provides evidence of "arbitrary and capricious conduct." (*Id.* ¶ 12.) Specifically, the complaint alleges that "[a]fter 9/11 all U.S. federal agencies were instructed to be very careful when it came to renewing VISAS or passports or any other immigration documents pertaining to individuals like the Plaintiff who had lived in Yemen." (*Id.*) In addition, "[t]his special instruction was particularly directed at individuals who came from countries that were largely Muslim" and that "is the identical conduct that President Trump is engaging in today."[2] (*Id.*) Thus, although the complaint makes no independent claim of discrimination, Alsaidi's legal theory is that, based on the instructions of "unknown higher ups located in Washington D.C.," passport center employees "searched the records of the Plaintiff to see if they could find a basis to reject her passport renewal." (*Id.* ¶ 13.) The complaint alleges that "[t]hey seized on . . . [8 U.S.C. § 1401(a)] of the Immigration Nationality Act of 1952," (*id.*), as a means of denying Alsaidi's passport renewal even though Alsaidi claims that she is a U.S. citizen and that the reason given for the denial is legally insufficient because she claims it misreads 8 C.F.R. § 101.3 (*id.* ¶¶ 14–16), which defines the circumstances under which persons born to foreign government officers or employees are born subject to the jurisdiction of the United States and considered U.S. citizens by birth. *But see infra*, note 6.

The second count essentially realleges the same facts under the rubric of a discrimination

---

[2] In fact, Alsaidi was first issued a passport on March 25, 2003, (Mot. Ex. B at 1), a little more than a year and a half after September 11, 2001. In addition, the National Passport Center denied Alsaidi's passport renewal application on February 23, 2013, (Mot. Ex. A), more than three and a half years before President Trump was elected.

3

claim, but also premises her claim for relief on the APA and the Mandamus Act. (*See* Compl. ¶¶ 1–4.) The second count alleges that "the State Department procedures and policies prohibited State Department officials from engaging in any discriminatory conduct," that the passport center employees nevertheless engaged in an "unlawful discriminatory practice," and that this was because they were "directed that whenever a Muslim applicant presented a request to have a passport renewed or a request from an individual with ties to a predominately Muslim country, that they had to deny those requests, whether there was a good faith basis to do so or otherwise." (*Id.* ¶ 18.) The complaint then realleges that the State Department has an informal policy "much like all federal agencies post 9/11 . . . to prevent any Muslim from entering America," and that, as a result, State Department employees "were directed to find some reason for denying Plaintiff's application to have her passport renewed, whether justified or not." (*Id.*)

Although Alsaidi's complaint includes two counts, the factual underpinnings are exactly the same, the legal theories are the same, and the relief sought is identical, that is, an order requiring that defendants renew her passport. (*Id.* ¶¶ 12–18.) Defendants have moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim, arguing that because plaintiff has an adequate alternative remedy available under 8 U.S.C. § 1503, she cannot bring her claims under the APA and the Mandamus Act. (Mot. at 3–4.)

## STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim requires the plaintiff to plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," because "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

While the Court does not "assume the truth of legal conclusions" or "accept inferences that are unsupported by the facts set out in the complaint," *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), the Court nevertheless treats "the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (alteration omitted). That said, a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.  Administrative Procedure Act Claim**

"[T]he APA provides that final agency action is subject to judicial review where there is no other adequate remedy." *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31 (D.D.C. 2009) (citing 5 U.S.C. § 704)). An adequate alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)). "[F]or example, relief will be deemed adequate 'where a statute affords an opportunity for *de novo* district-court review' of the agency action." *Id.* at 522–523 (quoting *Santa Cruz Neighborhood Health Ctr.*, 396 F.3d at 1270). The question is therefore whether plaintiff has available an adequate alternative remedy.

In her complaint, plaintiff asks only that her passport be renewed. She alleges the denial of her passport renewal application was based wrongly on the ground that she is not a U.S. citizen. Under 8 U.S.C. § 1503(a), if any person within the United States "claims a right or privilege as a national of the United States and is denied such right or privilege by any department . . . or official thereof, upon the ground that [s]he is not a national of the United States," she may institute an action "for a judgment declaring [her] to be a national of the United States." 8 U.S.C. § 1503(a); *see Xia*, 865 F.3d at 655 ("Section 1503 provides for judicial review of denials of any 'right or privilege' of citizenship, including invalidations of passports."). To initiate such action, a "plaintiff need make only a prima facie case establishing her citizenship by birth or naturalization," *Xia*, 865 F.3d at 652 (citing *Perez v. Brownell*, 356 U.S. 44, 47 n.2 (1958), *overruled on other grounds by Afroyim v. Rusk*, 387 U.S. 253, 268 (1967)), which may be as simple as "[p]resenting proof of a naturalization certificate or passport—even if already administratively cancelled." *Id.* at 656. "The government must then respond with clear, unequivocal, and convincing evidence rebutting the plaintiff's showing of citizenship." *Id.* at 652. Actions brought under section 1503 "shall be filed in the district court of the United States for the district in which such person resides or claims a residence." 8 U.S.C. § 1503(a); *see Xia*, 865 F.3d at 655–56.

The D.C. Circuit recently held that where an individual's passport has been revoked, "section 1503 provides plaintiffs an adequate avenue to assert . . . citizenship claims" and "requires a claimant to file in the district in which such person resides or claims a residence." *Xia*, 865 F.3d at 655.[3] In this context, passport revocation and the denial of a passport renewal

---
[3] Courts have uniformly reached the same conclusion. *See, e.g., Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1233–34 (D. Ariz. 2016) ("Because 8 U.S.C. § 1503(a) affords Plaintiffs a right of action, the APA does not apply."); *Hassan v. Holder*, 793 F. Supp. 2d 440, 446 (D.D.C.

application do not present meaningfully different questions. *See, e.g.*, *Villareal v. Horn*, 203 F. Supp. 3d 765, 773 (S.D. Tex. 2016) ("[C]ourts have repeatedly dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national, reasoning that . . . a judicial declaration of citizenship and entitlement to a passport [] may be directly sought through 8 U.S.C. § 1503(a).") (collecting cases); *see also Hassan v. Holder*, 793 F. Supp. 2d 440, 445 (D.D.C. 2011).[4]

Based on her complaint, plaintiff seeks the renewal of her passport and nothing else. Plaintiff's passport renewal application was denied based on the National Passport Office's assessment that she is not a citizen. To renew her passport, plaintiff will require proof of citizenship, and under 8 U.S.C. § 1503(a), she may accomplish this directly through de novo review in the federal district court where she resides (i.e., the Northern District of California). This constitutes an adequate alternative remedy to achieve plaintiff's desired relief.

## II. Mandamus Act Claim

The Mandamus Act "grants district courts original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof

---

2011) (same); *Garcia v. Clinton*, No. 10-101, 2011 WL 2173689, at *3 (S.D. Tex. June 1, 2011) (same); *Raya v. Clinton*, 703 F. Supp. 2d 569, 575 (W.D. Va. 2010) ("Because 8 U.S.C. § 1503(a) provides an adequate remedy by which the plaintiff may challenge the denial of her passport application, the court agrees with the defendants that Counts IV [APA claim] and V [request for mandamus relief] are subject to dismissal.").

[4] A similar but more drawn-out fact pattern underlay the opinion in *Hassan*, where the plaintiff was first denied a passport based on his father's position as a foreign diplomat. 793 F. Supp. 2d at 443. "Ten years later, plaintiff applied again, and this time his application was approved." *Id.* His passport was confiscated two years after that by a U.S. Citizenship and Immigration Services officer during an appointment related to his wife's lawful permanent residence application. *Id.* Plaintiff then "applied for and successfully received a replacement passport in July 2009," but two months after that, the National Passport Center "sent plaintiff a letter asking him to return the passport because the agency had 'erred in issuing [it] in the first place.'" *Id.* As is the case here, plaintiff brought his claims under both the APA and the Mandamus Act, which the district court dismissed because section 1503 provided an adequate alternative remedy. *Id.* at 445.

to perform a duty owed to the plaintiff.'" *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting 28 U.S.C. § 1361). "To secure mandamus relief, a plaintiff must demonstrate that (1) [s]he has a 'clear right to relief'; (2) the defendant has 'a clear duty to act'; and (3) there is no other adequate remedy available to plaintiff." *Walpin v. Corp. for Nat'l & Cmty. Servs.*, 630 F.3d 184, 187 (D.C. Cir. 2011). Mandamus "is a law of last resort, available 'only if [the plaintiff] has exhausted all other avenues of relief and only if the defendants owes [her] a clear nondiscretionary duty.'" *Chacoty v. Tillerson*, No. 14-764, 2018 WL 443493, at *5 n.3 (D.D.C. Jan. 16, 2018) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Here again, plaintiff cannot satisfy these requirements.

The right to hold a passport "is subordinate to national security and foreign policy considerations; as such it is subject to reasonable governmental regulation." *Haig v. Agee*, 453 U.S. 280, 306 (1981). So, while "passports are issued to all law-abiding American citizens who apply for them and comply with the rules prescribed . . . it is not obligatory to issue one to every citizen who desires it." *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1, 4 (D.D.C. 1998) (citing 3 John Bassett Moore, A Digest of International Law 921 (1906) (statement of Secretary of State Hay to diplomatic and consular officers, Mar. 27 1899)). And more to the point, "everyone who applies for a passport is required to present proof of identity and citizenship." *Patel v. U.S. Dep't of State*, No. 11-cv-6, 2013 WL 3989196, at *5 (W.D. Wisc. Aug. 2, 2013) (citing 22 C.F.R. § 51.23, 51.40–.41); *see United States v. Ginsberg*, 243 U.S. 472, 474–75 (1917) ("[E]very certificate of citizenship must be treated as granted upon condition that the government may challenge it . . . and demand its cancelation unless issued in accordance with [statutory] requirements.").

Moreover, as already noted, other means of relief are available to plaintiff, so under the

8

Mandamus Act, judicial review is precluded. *Hassan*, 793 F. Supp. 2d at 445.

Applying these governing principles of law, the Court concludes that plaintiff has not demonstrated that defendants owe her a clear nondiscretionary duty, *see Chacoty*, 2018 WL 443493, at *5 n.3, nor has she demonstrated that she lacks an adequate remedy, and for both reasons, she cannot secure mandamus relief. *See Walpin*, 630 F.3d at 187.

### III. Discrimination Argument

Plaintiff argues in her opposition that the relief available under section 1503 is inadequate because—contrary to the relief requested in her complaint—she seeks "for the Department of State Passport Office to end its blanket discriminatory policy, not a declaration of Plaintiff's citizenship." (Opp. at 4.) But plaintiff cannot salvage her APA claim by asserting that her "main objective is to address the larger policy of discrimination." (*Id.*)

First, her complaint only requests that the Court order the State Department to renew her passport and makes no mention of injunctive or any other form of relief. Even if she had requested injunctive relief, however, she would also need to demonstrate that a court could not provide such relief under section 1503 in order to prove that the statute could not serve as an adequate alternative remedy. *See Villareal*, 203 F. Supp. 3d at 773–74 (concluding that plaintiffs had failed to carry their burden to show that section 1503 is an inadequate remedy for their APA claims in part because they failed to establish that section 1503 "divests a district court of its power to enter a preliminary injunction"). "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987) *abrogated in part on other grounds by Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff argues that "a declaratory judgment regarding Plaintiff's

9

citizenship will do nothing to address the discriminatory policy that Defendants uphold against Yemeni-Americans seeking to travel or renew their passports." (Opp. at 4.) That may be so, but plaintiff is not seeking redress for this putative policy nor has she brought a discrimination claim based on her national origin or religion. Plaintiff's complaint is limited to a challenge to the only final agency action she identifies—the denial of her passport renewal—under section 706(2)(a) of the APA and this challenge is in turn precluded by the availability of relief under 18 U.S.C. § 1503.

Second, the APA is not a discovery mechanism. "Discovery or supplementation of the administrative record is . . . not permitted 'unless [a party] can demonstrate unusual circumstances justifying a departure from this general rule." *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017). Obtaining even limited discovery requires a party to "make 'a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record.'" *Id.* (quoting *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487–88 (D.C. Cir. 2011)). Plaintiff openly admits that she "needs discovery in this case to further prove the discriminatory policy in place." (Opp. at 6.) This sentiment misconstrues judicial review under the APA. *See Kean v. Chertoff*, 419 F. Supp. 2d 597, 602 (S.D.N.Y. 2006) (refusing to permit plaintiff to simply explore whether the agency's policy "falls within the scope of both the INA and federal regulations"). Plaintiff cannot use the APA to justify a fishing expedition for evidence that defendants were motivated, not by their stated reason for denying her passport renewal application (that plaintiff is not a U.S. citizen), but by a discriminatory policy that plaintiff believes exists.

Third, even if plaintiff could bring a discrimination claim under the APA, which she has

not done here, there are several problems with the allegations in her complaint and with the arguments in her opposition. For example, plaintiff does not acknowledge or attempt to explain how her 2003 passport application was granted, even though she alleges the discriminatory policy was instituted in 2001. *See supra*, note 2. Nor does she contend with the fact that the National Passport Center offered a reasoned basis for denying her passport renewal application. (*See* Mot. Ex. A)[5]; *Dillmon v. Nat'l Transp. Safety Bd.*, 588 F.3d 1085, 1090 (D.C. Cir. 2009) ("[W]e defer to the wisdom of the agency, provided its decision is reasoned and rational, and even uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."). Further, the complaint's allegations are "bare assertions," which do not even amount to "a 'formulaic recitation of the elements' of a constitutional discrimination claim." *See Iqbal*, 686 U.S. at 681. Conclusory allegations "are not entitled to the assumption of truth," *id.* at 680, and plaintiff offers no factual support for her claim of discrimination other than conclusory allegations. *See Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for [the denial], and the purposeful, invidious discrimination [plaintiff] asks us to infer, discrimination is not a plausible conclusion."). Finally, the articles plaintiff cites in her

---

[5] Defendant explains the rationale for the denial of the passport renewal application as follows:
> The Secretary of State may only issue passports to U.S. nationals[,] . . . defined as individuals "born in the United States, and subject to the jurisdiction thereof." 8 U.S.C. § 1401(a). . . . [This definition] was intended to exclude children of foreign ministers or diplomatic officers born within the United States from operation of the citizenship clause of the Fourteenth Amendment. *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898), and federal regulations accordingly provide that "[a] person born in the United States to a foreign diplomatic officer accredited to the United States, as a matter of international law, is not subject to the jurisdiction of the United States." 8 C.F.R. § 101.3(a). The term foreign diplomatic officers includes secretaries "with comparable diplomatic status and immunities who are accredited to the United Nations[.]" 8 C.F.R. 101.3(a)(2).

(Mot. at 6–7.)

opposition offer no additional relevant evidence.[6] (*See* Opp. at 8.) Both describe a pattern of passport revocations occurring exclusively in the United States Embassy in Saan'a, Yemen, not in passport offices in the United States.[7] Plaintiff submitted her application to renew her passport in the United States, not Yemen, and she was not accused of fraud; instead, the passport office denied her passport renewal application for reasons that are facially coherent. *See Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012) ("To survive arbitrary and capricious review, an agency action must be the product of reasoned decisionmaking.").

To seek the relief she professes to want, plaintiff must file her claim under the proper statute—8 U.S.C. § 1503—and in the proper venue—the Northern District of California. (Compl. at 1 & ¶ 2.) Since she has not done this here, the motion to dismiss will be granted.

## CONCLUSION

Defendants' motion to dismiss is granted and plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted. A separate Order, ECF No. 19, accompanies this Memorandum Opinion.

Date: February 20, 2018

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

---

[6] The Court considers these articles because "courts may take judicial notice of matters of a general public nature without converting a motion to dismiss into one for summary judgment." *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 264 (D.D.C. 2017) (citing *Duma v. JPMorgan Chase*, 828 F. Supp. 2d 83, 85 n.3 (D.D.C. 2011)).

[7] *See* Ramzi Kassem, *Passport Revocation as Proxy Denaturalization: Examining the Yemen Cases*, 82 Fordham L. Rev. 2099, 2100–102 (2014) (explaining that officials at the U.S. Embassy in Yemen have taken to seizing Yemeni-Americans' passports on suspicion of fraud and requiring some of these individuals to wait up to two years for return of their passports); Smitha Khorana, *Harrowing Treatment of Yemeni-Americans Demands Government Probe, Groups Say*, The Intercept (Jan. 27, 2016) (describing Americans stranded in Yemen due to accusations of fraud related to their passports).